UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIAN MACCORMACK and MICHAEL TRAUGUTT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GROUPON, INC.,<br><br>Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT** |

## VERIFIED CLASS ACTION COMPLAINT

Plaintiffs Brian MacCormack and Michael Traugutt ("Plaintiffs") allege, upon information and belief based upon, *inter alia*, the investigation made by and through their attorneys, except as to those allegations that pertain to the Plaintiffs themselves, which are alleged upon knowledge, as follows:

1. Plaintiffs bring this class action on behalf of themselves and the public stockholders of Groupon, Inc. ("Groupon" or the "Company") entitled to vote at Groupon's 2013 annual meeting of stockholders (the "Annual Meeting"). Plaintiffs, holders of Groupon common stock, seek injunctive relief requiring Groupon to comply with the "unbundling rules" promulgated by the U.S. Securities and Exchange Commission (the "SEC") under Section 14 of the Securities Exchange Act of 1934, as amended, (the "Exchange Act"), including SEC Rules 14a-4(a)(3) and 14a-4(b)(1) promulgated thereunder. The unbundling rules require that shareholders be allowed to vote on each separate matter presented in a proxy for shareholder vote.

1

2. On April 29, 2013, Groupon issued a Schedule 14A Definitive Proxy Statement (the "Proxy") and Proxy Card in connection with the Annual Meeting, which is scheduled for June 13, 2013. The Proxy and Proxy Card violated the SEC's unbundling rules set out in Rules 14a-4(a)(3) and 14a-4(b)(1) under the Exchange Act by aggregating two separate and unrelated amendments to Groupon's 2011 Incentive Plan (the "Plan"), one of which seeks shareholder ratification of an *ultra vires* act by the Board, thus impermissibly attempting to force shareholders to cast a single vote on fundamentally separate matters.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

4. Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §§ 1391(b) and (c), as Groupon is incorporated in this District.

## THE PARTIES

5. Plaintiffs Brian MacCormack and Michael Traugutt are shareholders of Groupon and have been shareholders of Groupon continuously since July 2012 and May 2012, respectively.

6. Defendant Groupon is a Delaware corporation with its principal place of business at 600 West Chicago Avenue, Suite 830, Chicago, Illinois 60610. Groupon operates as a local commerce marketplace that connects merchants to consumers by offering goods and services at a discount in North America and internationally.

## FURTHER SUBSTANTIVE ALLEGATIONS

### *The Plan*

7. The Plan was adopted by Groupon's Board of Directors (the "Board") in 2011 and approved by the Company's shareholders on June 19, 2012. The Plan provides for the granting of stock options, stock appreciation rights, restricted stock, restricted stock units, and cash incentive awards to Groupon's executive officers, employees, and directors.

8. The Plan reserves 50,000,000 shares of Groupon common stock for issuance as awards. Specifically, Section 5.1(b) of the Plan provides that the total number of shares which may be issued with respect to awards under the Plan will be 50,000,000 shares (the "Total Share Limit").

9. The Plan also limits the amount of shares that can be granted to an individual during a calendar year. Specifically, Section 5.1(f) of the Plan provides that the maximum number of shares that may be covered by awards granted to any one participant during any one calendar-year period will be 1,000,000 (the "Per-Participant Annual Limit").

### *The Board Exceeds the Per-Participant Annual Limit and Files the 2013 Proxy*

10. On January 28, 2013, the Board, through its Compensation Committee, granted Kal Raman ("Raman"), the Company's Chief Operating Officer, 1,200,000 restricted stock units under the Plan, 200,000 shares in excess of the Per-Participant Annual Limit.

11. The Annual Meeting is scheduled for June 13, 2013. On April 29, 2013, the Company filed the Proxy along with the Proxy Card in connection with the Annual Meeting. A true and correct copy of the Proxy, including the Proxy Card, is attached hereto as Exhibit A.

12. Proposal No. 4 in the Proxy seeks proxies for the Annual Meeting to amend the Plan in two ways: (1) to increase the Total Share Limit by 15 million shares, from the 50 million

shares currently authorized to 65 million shares; and (2) to increase the Per-Participant Annual Limit from 1 million shares to 7.5 million shares. *See* Ex. A. pp. 1, 47-54, Appendix A (collectively "Proposal No. 4"). If approved by the Company's shareholders, the amendments to the Plan would be deemed effective as of June 13, 2013, the date of the Annual Meeting.

13. As described in the Proxy, the Board is seeking to increase the Total Share Limit because it "believes that this increase is necessary to continue to be aligned with [Groupon's] business strategy and culture to attract and retain top talent, and to reward employees for strong business results and individual performance." See Ex. A, p 48. As described in the Proxy, the Board is seeking to increase the Per-Participant Annual Limit because it "believes that this increase is necessary in order to allow [Groupon] flexibility in attracting and retaining top talent, particularly as we are searching for a new Chief Executive Officer." See Ex. A, p 48.

*Plaintiffs' Demand Letter and the Resulting Proxy Supplement*

14. On May 6, 2013, Plaintiffs sent a demand letter to the Board (the "Demand Letter"). In the Demand Letter, Plaintiffs demanded, among other things, that the Board (a) rescind the 200,000 restricted stock units granted to Raman in excess of the Per-Participant Annual Limit and (b) issue supplemental and corrective disclosures prior to the Annual Meeting informing shareholders that the Board granted Raman more shares than allowed under the Plan.

15. On May 16, 2013, the Company filed an Amendment No. 1 to the Proxy (*i.e.* the "Proxy Supplement"). The Proxy Supplement is attached hereto as Exhibit B. The Proxy Supplement "supplements the description of the Company's 2011 Plan" in Proposal No 4.

16. The Proxy Supplement acknowledged that the 1,200,000 restricted stock units granted to Raman on January 28, 2013, exceeded the Per-Participant Annual Limit. As stated in the Proxy Supplement:

> The 2011 Plan Proposal is hereby supplemented with additional information pertaining to the Company's grant of 1,200,000 restricted stock units (RSUs) to Kal Raman on January 28, 2013[.] [T]hat award was in excess of the current 1,000,000 share calendar year per person award limit in our 2011 Plan[.]

17. Rather than rescind this *ultra vires* grant, however, the Board determined to seek shareholder ratification of the 200,000 excess shares granted to Raman from the Company's shareholders at the Annual Meeting.

18. Specifically, the Board is attempting to seek shareholder ratification by changing the effective date of the proposed amendments to the Plan that will be voted on at the Annual Meeting in Proposal No. 4 from June 13, 2013 to January 1, 2013. *See* Exhibit B.

19. In other words, if the proposed amendments to the Plan are approved by the Company's shareholders at the Annual Meeting, the amendment to increase the Per-Participant Annual Limit from 1 million to 7.5 million shares will apply retroactively to all awards made after January 1, 2013, thereby ratifying the entire 1.2 million restricted stock unit award granted to Raman on January 28, 2013. As stated in the Proxy Supplement: "If the 2011 Plan Proposal is approved, the amendment to the 2011 Incentive Plan will be effective as of January 1, 2013 (not as of June 13, 2013 as previously disclosed) and the grant of 200,000 RSUs to Mr. Raman will be ratified." On the other hand, if Proposal No. 4 is not approved, the 200,000 excess awards granted to Raman "will be deemed void." See Ex. B. Thus, in essence, when voting on whether to approve the increase in the Per-Participant Annual Limit, shareholders are also voting on whether to ratify or deem void a past award made in violation of the Plan.

***Proposal No. 4 Violates the Federal Securities Laws.***

20. Plaintiffs support one of the items in Proposal No. 4: the amendment to increase the Total Share Limit by 15 million shares, from the 50 million shares currently authorized to 65 million. Plaintiffs oppose, however, the amendment to increase the Per-Participant Annual Limit

from 1 million shares to 7.5 million shares, which, along with the retroactive application of the amendment, will constitute a ratification of an *ultra vires* award granted by the Board. Plaintiffs believe that this amendment is not in the best interests of Groupon's shareholders and believes that the 200,000 shares granted to Raman in excess of the Per-Participant Annual Limit should be voided.

21. However, both the Proxy and the Proxy Card provided to Plaintiffs and all other Groupon shareholders seek a single vote on separate matters by tying the amendments together in a single Proposal No. 4. As stated in the Proxy, Proposal No. 4 seeks: "[t]he approval of the amendment to the Groupon, Inc. 2011 Incentive Plan to increase the number of authorized shares and to increase the individual limit on annual share awards." *See* Ex. A, p. 1. And as stated in the Proxy Card, Proposal No. 4 seeks "To approve the amendment to the Groupon, Inc. 2011 Incentive Plan to increase the number of shares available under the plan and to increase the individual limit on annual share awards." *See* Ex. A, Proxy Card. Plaintiffs and Groupon's other shareholders can only vote for both of the proposed amendments, or against both of the proposed amendments.

22. This "bundling" of the proposed amendments to the Plan violates the federal securities laws, specifically Rules 14a-4(a)(3) and 14a-4(b)(1) under the Exchange Act.

23. Rule 14a-4(a)(3) provides:

(a) The form of proxy . . .

(3) Shall identify clearly and impartially *each matter intended to be acted upon*, whether or not related to or conditioned on the approval of other matters . . . (emphasis added)

24. Rule 14a-4(b)(1) provides:

Means shall be provided in the form of proxy whereby the person solicited is afforded an opportunity to specify by boxes a choice between approval or

disapproval of, or abstention *with respect to each separate matter referred to therein as intended to be acted upon*, other than elections to office. (emphasis added)

25. Each of the proposed amendments to the Plan constitute separate matters. The second amendment itself presents two distinct issues: whether to increase the Per-Participant Limit under the Plan going forward and whether to ratify or void the excess award the Board previously granted to Raman. Accordingly, Plaintiffs and Groupon's other shareholders are being wrongfully denied the right to vote separately on each separate matter, as contemplated by Rules 14a-4(a)(3) and 14a-4(b)(1) under the Exchange Act.

26. Accordingly, the Annual Meeting should be enjoined until the Company unbundles the proposed amendments in Proposal No. 4 to comply with Rules 14a-4(a)(3) and 14a-4(b)(1) under the Exchange Act.

## CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of owners of Groupon publicly-traded Class A common stock as of April 22, 2013, the record date for the determination of shareholders entitled to vote at the Annual Meeting (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

28. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. According to the Proxy, as of April 22, 2013, there were over 658 million shares of Class A common stock outstanding. All members of the Class may be identified from records maintained

by Groupon or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

29. Questions of law and fact are common to the Class, including, *inter alia*, the following:

    a. Has Groupon violated Section 14(a) of the Exchange Act and SEC Rules 14a-4(a)(3) and 14a-4(b)(1) promulgated thereunder; and

    b. Whether Plaintiff and the other members of the Class would be irreparably harmed if the Annual Meeting was held without any of the corrective actions described herein.

30. Plaintiff's claims are typical of the claims of the other members of the class. Plaintiff is committed to prosecuting this action, will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

31. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

32. Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

33. A class action is a superior method for adjudication because the cost of prosecuting individual actions is prohibitive and would be an inefficient use of judicial resources because the injunctive relief being sought is an equitable remedy and applicable to the class as a whole.

34. Concentrating the litigation of claims in this forum is desirable because the Company is a Delaware corporation.

35. Defendants have acted on grounds generally applicable to the class, making appropriate final injunctive relief with respect to the Class as a whole.

36. There are no issues requiring individualized resolution or the creation of sub-classes, thus class-wide adjudication will not present manageability concerns.

## COUNT I
### (Violations of Section 14(a) of the Exchange Act and SEC Rules 14a-4(a)(3) and 14a-4(b)(1))

37. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

38. Section 14(a) of the Exchange Act provides:

It shall be unlawful for any persons by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security registered pursuant to Section 12 of this act.

39. Groupon's issuance of the Proxy contravened rules and regulations prescribed by the Commission and therefore violated Section 14(a) of the Exchange Act. SEC Rule 14a-4(a)(3) provides:

(a) The form of proxy . . .

(3) Shall identify clearly and impartially *each matter intended to be acted upon, whether or not related to or conditioned on the approval of other matters* . . . (emphasis added)

40. SEC Rule 14a-4(b)(1) provides:

Means shall be provided in the form of proxy whereby the person solicited is afforded an opportunity to specify by boxes a choice between approval or disapprovals of, or abstention *with respect to each separate matter referred to therein as intended to be acted upon*, other than elections to office. (emphasis added)

41. The Proxy and the Proxy Card violate SEC Rule 14a-4(a)(3) and SEC Rule 14a-4(b)(1) because they tie together three separate matters including (a) the amendment to increase the Total Share Limit by 15 million shares, from the 50 million shares currently authorized to 65 million; and (b) an amendment to increase the Per-Participant Annual Limit from 1 million shares to 7.5 million shares going forward, and (c) whether to ratify or deem void an *ultra vires* award previously granted by the Board. In so doing, Groupon attempts to prevent Plaintiffs and other shareholders from exercising their rights to separately vote on each item in Proposal No. 4, as contemplated by the "unbundling" rules promulgated under the Exchange Act.

42. Consequently, Groupon should be enjoined from (i) certifying or otherwise accepting any vote cast, by proxy, for or on behalf of any Groupon shareholder in connection with Proposal No. 4 in the Proxy or Proxy Card, (ii) amending the Plan based upon any such vote or votes, or (iii) otherwise proceeding at the Annual Meeting, or at any other time, in a manner inconsistent with Rules 14a-4(a)(3) and 14a-4(b)(1) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment as follows:

A. Declaring this action to be a class action and certifying Plaintiffs as the Class representatives and their counsel as Class counsel;

B. Preliminarily and permanently enjoining Groupon from (i) certifying or otherwise accepting any vote cast, by proxy, for or on behalf of any Groupon shareholder in connection

with Proposal No. 4 in the Proxy or Proxy Card, (ii) amending the Plan based upon any such vote or votes, or (iii) otherwise proceeding at the Annual Meeting, or at any other time, in a manner inconsistent with SEC Rules 14a-4(a)(3) and 14a-4(b)(1) of the Exchange Act.

    C.    Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance of fees and costs for Plaintiff's attorneys, experts, and accountants; and

    D.    Awarding such other and further relief as this Court deems just and proper.

Dated: May 24, 2013

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
Rosemary J. Piergiovanni (Bar No. 3655)
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
rpiergiovanni@farnanlaw.com

*Attorneys for Plaintiff*

*Of Counsel:*

LEVI & KORSINSKY, LLP
Eduard Korsinsky
Nicholas I. Porritt
Steven J. Purcell
30 Broad Street, 24th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171