IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| BRIAN MACCORMACK, and MICHAEL TRAUGUTT, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 13-940-GMS |
| GROUPON, INC., | ) ) | |
| Defendant | ) ) | |

## **ORDER**

WHEREAS, on May 24, 2013, the plaintiffs Brian MacCormack and Michael Traugutt ("the Plaintiffs") filed a Verified Class Action Complaint against defendant Groupon, Inc. ("Groupon"), along with a motion for preliminary injunction seeking to enjoin a vote by Groupon's shareholders (D.I. 1, 4);[1]

WHEREAS, on or about June 4, 2013, the parties reached an agreement whereby the Plaintiffs withdrew their motion for preliminary injunction; the shareholder vote would proceed as planned on June 13, 2013; and Groupon would not certify the votes on or implement Proposal No. 4 until the resolution of the lawsuit (D.I. 9);

---

[1] This lawsuit stems from Groupon's issuance of excessive restricted stock units ("RSUs") to its Chief Operating Officer, Kal Raman ("Raman"). Pursuant to Groupon's 2011 Incentive Plan ("the Plan"), no individual participant could receive more than 1,000,000 RSUs, and a total of 50 million shares were authorized as RSUs. In January 2013, Groupon's Board issued Raman 1,200,000 RSUs. On April 29, 2013, Groupon filed a Schedule 14A Definitive Proxy Statement, which included four proposals. Among these was a proposal to amend the Plan to increase the total authorized RSUs to 65 million and to increase the per-participant limit to 7.5 million RSUs— "Proposal No. 4." In an amendment to the Proxy issued after the Plaintiffs sent a demand letter seeking rescission, Groupon disclosed to the shareholders that Raman had previously been issued excessive RSUs, but that approval of Proposal No. 4 would ratify the stock grant.

The Plaintiffs contended that the Proxy was improper because Proposal No. 4 contained two distinct issues for the shareholders' consideration: the total number of authorized RSUs, as well as the per-participant limit. The Plaintiffs argued that such a proposal violated SEC Rules prohibiting the "bundling" of separate matters, and sought to enjoin the vote scheduled for June 13, 2013.

WHEREAS, on June 13, 2013, Groupon's shareholders approved Proposal No. 4;

WHEREAS, on August 15, 2013, the parties reached a settlement agreement ("Settlement"). (D.I. 21, Ex. 2.) The Settlement dictated that the Plaintiffs would dismiss all claims against Groupon, and Groupon would be permitted to certify the vote on Proposal No. 4, allowing it to go into effect. Groupon agreed to rescind the 200,000 excess RSUs issued to Raman in January 2013, and also agreed to (1) abide by the SEC's "unbundling" rules, (2) comply with the law and all corporate governance documents, (3) engage a third party to review the process by which stock options and other equity grants are made, and (4) retain adequate documentation of all awards made under the Plan or any other incentive plans. Groupon was barred from reissuing the rescinded RSUs until after December 31, 2013. Groupon did in fact reissue the 200,000 RSUs to Raman on January 10, 2014. (D.I. 28 at 5 n.4.)

WHEREAS, on September 16, 2013, the parties filed a Stipulation and Proposed Order whereby the Plaintiffs voluntarily dismissed their claims against Groupon, and the parties agreed that the Plaintiffs would file a motion for attorney's fees (D.I. 14);

WHEREAS, presently before the court is the Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Expenses (D.I. 20), filed on September 27, 2013;

WHEREAS, having considered the party's positions as set forth in their papers, as well as the applicable law;

IT IS HEREBY ORDERED that:

1. The Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Expenses (D.I. 20) is GRANTED IN PART;[2]

---

[2] The Plaintiffs request $835,987.19 in fees and expenses, as calculated according to a percentage-of-recovery method. (D.I. 21.) The Plaintiffs argue that such a figure is reasonable in light of the "substantial benefit" conferred upon Groupon as a result of the Plaintiffs' lawsuit. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393–94 (1970); *Kahan v. Rosenstiel*, 424 F.2d 161, 166–67 (3d Cir. 1970); *Ams. Mining Corp. v. Theriault*, 51 A.3d 1213,

2. The Plaintiffs are awarded reasonable attorneys' fees in the amount of $169,908.75;

3. The Clerk of the Court is directed to close C.A. No. 13-940-GMS.

Dated: January 16, 2015

UNITED STATES DISTRICT JUDGE

---

1252–53 (Del. 2012). Alternatively, the Plaintiffs submit a figure of $425,259.07, calculated using the lodestar method, at the court's request. (D.I. 26.)

The court acknowledges that it has previously applied the percentage-of-recovery method in facially similar cases. (*See Scherer v. Lu*, C.A. No. 13-358-GMS, D.I. 33.) But the court sees meaningful differences between *Scherer* and the facts of the case at bar. First, the Plaintiffs here discovered the improper stock grant because Groupon itself sought to amend the Plan. In other words, Groupon appeared to have been working towards remedying its mistake even before the lawsuit was filed. The court does not downplay the significance of the additional disclosures in the amended Proxy statement issued after the lawsuit was filed, but this was not a case involving ongoing, repeated breaches of the Plan. There appeared to be little threat of continued transgressions. Second, whereas the court was convinced that the rescinded stock options in *Scherer* amounted to a common fund for the benefit of the corporation, the rescinded RSUs here have already been reissued—they are gone. (D.I. 28 at 5 n.4.) The rescission and temporary delay in reissuing the RSUs can hardly qualify as a "substantial benefit" to the corporation. The lawsuit resulted in Groupon making some disclosures and agreeing to some corporate reforms, which indeed have value. *In re Sauer-Danfoss Inc. S'holders Litig.*, 65 A.3d 1116, 1136–37 (Del. Ch. 2011). But without the rescinded RSUs serving as a yardstick for which to measure the benefits conferred, the court is much less confident in any proposed percentage-of-recovery figure.

Thus, the court views the lodestar method as a more reliable means of measuring the value of the Plaintiffs' attorneys' contributions. The Plaintiffs submit that the aggregate hours worked by the attorneys and their staff, multiplied by their respective billing rates amounted to $169,908.75. (D.I. 26 at 2.) The Plaintiffs argue a 4X multiplier is reasonable given "the risks of nonrecovery, to reward an extraordinary result, [and] to encourage counsel to undertake socially useful litigation." *See In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327, 340–41 (D.N.J. 2002). Thus, the Plaintiffs seek $425,259.07 under the lodestar method. For the reasons explained above, the court is not convinced that these factors—aside from the risk associated with all contingent-fee cases—actually support the Plaintiffs' proposed multiplier. Moreover, as Groupon points out, the Plaintiffs utterly fail to document how the hours worked were allocated in practice. *See Amico v. New Castle Cnty.*, 654 F. Supp. 982, 997 (D. Del. 1987) ("[D]istrict courts should first examine 'how many hours were spent *in what manner* by which attorneys.' . . . A predicate to performing this [lodestar] analysis into reasonableness is the court's ascertainment of whether the hours claimed are adequately documented." (quoting *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973))).

Despite several opportunities to do so, the Plaintiffs have not substantiated their lodestar calculation. Nonetheless, the court will grant an award of attorneys' fees and expenses in the amount of $169,908.75, using no multiplier, in light of the modest benefits resulting from this lawsuit.